IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CITI GAS CONVENIENCE, INC.,** | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **UTICA MUTUAL INS. CO.,** | : | No. 15-6691 |
| *Defendant*. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                              FEBRUARY 9, 2016

Citi Gas Convenience, Inc. claims its insurer, Utica Mutual, breached its insurance contract by refusing to cover property damage and business interruption costs caused by a water main break and that Utica acted in bad faith in handling Citi Gas's claim. Utica moves the Court to dismiss Citi Gas's Complaint, arguing that the language of the insurance policy excludes the type of insurance claim made by Citi Gas and, accordingly, that Citi Gas's bad faith claim must fail if the contract claim fails. After reviewing Utica's motion and Citi Gas's opposition to it, the Court will grant the motion and dismiss the case.

**BACKGROUND**

According to the Complaint, Citi Gas Convenience operates a business at 4601 Frankford Avenue, Philadelphia, Pennsylvania. On December 23, 2013, the business premises were damaged by a water main break. Citi Gas submitted a claim to Utica Mutual under its commercial property policy. Utica denied coverage, stating that the damage was due to "surface water,"[1] and citing the following policy exclusion:

---

[1] In its Complaint, Citi Gas alleges that Utica denied coverage because the damage was caused by "ground water" and attaches Utica's denial letter to the Complaint. That letter, however, states that the denial was because the cause of the damage was "surface water," a term used in the policy's Water Exclusion. *See* Complaint, Ex. B. "While the Court must accept as true all allegations in a Complaint, it

1

> B. Water
> 1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
> 2. Mudslide or mudflow;
> 3, Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;
> 4. Water under the ground surface pressing on, or flowing or seeping through:
>> a. Foundations, walls, floors or paved surfaces;
>> b. Basements, whether paved or not; or
>> c. Doors, windows or other openings; or
> 5. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph 1., 3. or 4., or material carried or otherwise moved by mudslide or mudflow.
> This exclusion applies regardless of whether any of the above, in Paragraphs 1. through 5., is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water. But if any of the above, in Paragraphs 1. through 5., results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

Def.'s Mot. to Dismiss, Ex. B, at 50.

Citi Gas filed suit in the Philadelphia Court of Common Pleas, asserting claims for breach of contract, both for failing to pay for Citi Gas's property damage and for failing to pay its business interruption claim, and for bad faith. Utica removed the case to federal court on the basis of diversity jurisdiction and filed a motion to dismiss.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl.*

---

is not obliged to ignore exhibits that directly contradict those allegations . . ." *Rose v. Rothrock*, No. CIV. A. 08-3884, 2009 WL 1175614, at *6 (E.D. Pa. Apr. 29, 2009).

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see*

*also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).  That admonition does not demand that the Court ignore or disregard reality.  The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)).  Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

**DISCUSSION**

    **I.**    **Breach of Contract (Counts I and II)**

Under Pennsylvania law, "[w]hen the language of the [insurance] policy is clear and unambiguous, [the Court] must give effect to that language."  *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) (citation, quotation marks, and internal brackets omitted).  However, if a provision in the policy is ambiguous, "the policy is to be construed in the favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005).

The dispute in this case hinges on the definition of the policy term "surface water," and, more specifically, whether that term is ambiguous, in that it may mean water from natural sources only, or water from both natural and man-made sources.  Utica argues that even though

4

"surface water" is not defined in the policy, the term is not ambiguous because the water exclusion provision makes clear that "surface water" includes water from both natural and man-made causes. It points to the policy language outlining the exclusion, which states that "[t]his exclusion applies regardless of whether any of the above in Paragraphs 1. through 5., is caused by an act of nature or is otherwise caused." *See* Def.'s Mot., Ex. B, at 50. Utica also cites to decisions of other courts applying water exclusions to water main breaks. *See, e.g., Pavuk v. State Auto Ins., Co.*, No. Civ. A. 96-8459, 1997 WL 43104, at *4 (E.D. Pa. July 5, 1997) (holding that the water exclusion "clearly excludes coverage for water damage caused in whole or in part from non-domestic sources" regardless of whether the source is natural or man-made); *Kozlowski v. Penn Mutual Ins. Co.*, 441 A.2d 388, 391 (Pa. Super. Ct. 1982) (holding that the water exclusion applied when the damage came from a water main break).[2]

Citi Gas's primary argument for coverage is that the "plain and ordinary" definition of "surface water" is water from natural sources, not from man-made sources like a water main.[3] To support this argument, Citi Gas quotes four dictionary definitions of "surface water," all of which use the word "natural," or "naturally," or cite examples of naturally occurring water.[4]

---

[2] In *Pavuk*, the plaintiffs argued that the water exclusion could be interpreted as applying to only natural causes, making it ambiguous and obligating the court to construe it in the insured's favor. *Pavuk*, 1997 WL 43104, at *3-4. The court rejected the plaintiffs' attempt to find ambiguity in the policy and held that the only distinction the policy drew was between domestic and non-domestic sources. *Id.* at *4. The *Kozlowski* court did not consider the question of natural versus man-made sources. Neither case involved "surface water" specifically, given that both cases involved direct or indirect damage from subsurface water originating from water main breaks.

[3] In its opposition, Citi Gas also argues that "there is no admission by Defendant as to the actual cause of the water damage, and a question of fact exists, rendering Defendant's motion premature." Pl.'s Opp. at 3. However, Utica, as it must at this stage, accepted Citi Gas's allegations as true for purposes of its motion, including Citi Gas's allegation that a water main break caused the damage to its property. Thus, any factual dispute as to the actual cause of the water damage is irrelevant.

[4] Pennsylvania courts have stated that surface waters are "'commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence.'" *T.H.E. Ins. Co. v.*

5

Citi Gas does not cite any case law, and it dismisses the cases cited by Utica by saying that Utica does not compare the policy language of the policies in those cases with the policy here, making comparison to those case "baseless and inappropriate."  However, Citi Gas does not attempt to explain why the comparison is inapt or how any differences in policy language distinguish this case from those cases.[5]

All in all, Citi Gas's arguments are unavailing.  While dictionary definitions of "surface water" may suggest naturally occurring water, Citi Gas ignores the language of the policy that modifies the term "surface water."  "Surface water" is a term in Paragraph 1 of the policy's water exclusion.  The water exclusion states that it "applies regardless of whether any of the above in Paragraphs 1. through 5., is caused by an act of nature or is otherwise caused."  *See* Def.'s Mot., Ex. B, at 50.  Thus, the policy clearly and plainly excludes damage from "surface water" that "is caused by an act of nature or *is otherwise caused*."  Even in the absence of a specific definition, then, "surface water," as used in this policy, encompasses both "surface water" from natural sources and "surface water" from man-made sources.[6]

---

*Charles Boyer Children's Trust*, 455 F. Supp. 2d 284, 296 (M.D. Pa. 2006) (quoting *Richman v. Home Ins. Co. of N.Y.,* 94 A.2d 164, 166 (Pa. Super. 1953)).  The word "usually" in that definition leaves room for the positions of both the Plaintiff and the Defendant in this case.

[5] Indeed, Citi Gas would be hard pressed to find a way to meaningfully distinguish the policy language here from the policy language in *Pavuk*.  The main difference between the policy language here and the policy language in *Pavuk* is that the policy here is even more explicit in encompassing both natural and man-made causes than the language in the *Pavuk* policy.  While much of the exclusion in *Pavuk* is very similar to the language in Citi Gas's policy, the *Pavuk* policy did not include language similar to the "caused by an act of nature or [] otherwise caused" language found in Citi Gas's Utica policy.

[6] There is case law from other jurisdictions in which courts have held that "surface water" is an ambiguous term and have therefore construed the term as including only water from natural sources (*i.e.*, in favor of the insured).  *See, e.g., Robert Dorsen, Inc. v. Aetna Cas. & Surety Co.*, 562 F. Supp. 495 (D.D.C. 1983); *Ferndale Dev. Co., Inc. v. Great Am. Ins. Co.*, 527 P.2d 939 (Colo. App. 1974).  Even if those cases were somehow binding on this Court, the exclusion clauses in the insurance policies discussed in those cases did not contain language like the language in the Citi Gas policy that clarified that the exclusion applied "whether any of the above in Paragraphs 1. through 5., is caused by an act of nature or is otherwise caused."

Because the plain language of the policy excludes the type of damage alleged by Citi Gas and because Citi Gas has not identified, in its Complaint or in its opposition, any other contractual provision that would provide coverage or somehow stem the tide of arguments favoring Utica's invocation of the exclusion, the Court will dismiss Citi Gas's breach of contract claims.

## II.     Bad Faith (Count III)

Utica also seeks dismissal of Citi Gas's bad faith claim.  "Resolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the denial of coverage, because under the circumstances the insurer necessarily has a reasonable basis for denying benefits."  *Gold v. State Farm Fire & Cas. Co.*, 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012).  Most of the allegations in Citi Gas's Complaint relating to its bad faith claim are tied to the denial of coverage.  To the extent that Citi Gas is asserting a bad faith claim based on the denial, the Court will dismiss the bad faith claim with prejudice.

Citi Gas also alleges in its bad faith claim that Utica acted in bad faith in the investigation of the claim.  "[I]f bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives."  *Id.* at 598.  Thus, Citi Gas may have an actionable claim for bad faith with respect to Utica's investigation of its claim.  However, Citi Gas provides no factual allegations that would support such a claim beyond conclusory statements.  To the extent that Citi Gas is asserting a bad faith claim based on something other than the denial of coverage, the Court will dismiss the bad faith claim without prejudice.

**CONCLUSION**

For the foregoing reasons, the Court will grant Utica's Motion to Dismiss. An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge